# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| DeLEON DURDEN, | ) CASE NO. 1:19-cv-2280 |
| | ) |
| Plaintiff, | ) JUDGE BENITA Y. PEARSON |
| | ) |
| v. | ) MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) |
| ANDREW SAUL, | ) |
| *Comm'r of Soc. Sec.*, | ) **REPORT AND RECOMMENDATION** |
| | ) |
| Defendant. | ) |

Plaintiff, DeLeon Durden (Plaintiff), challenges the final decision of Defendant Andrew Saul, Commissioner of Social Security (Commissioner), denying his application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. (Act). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be REVERSED and REMANDED for proceedings consistent with this opinion.

## I. Procedural History

On July 1, 2016, Plaintiff filed his application for SSI, alleging a disability onset date of July 1, 2016. (R. 10, Transcript (Tr.) 226). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (Tr. 157-225). Plaintiff participated in the hearing on June 7, 2018, was represented by counsel, and testified. (Tr. 103-131). A vocational expert (VE) also participated and testified. *Id*. On

October 11, 2018, the ALJ found Plaintiff not disabled. (Tr. 24). On August 16, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision.[1] (Tr. 1-7). On October 1, 2019, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 15 & 18).

Plaintiff asserts the following assignments of error: (1) the ALJ erred in failing to grant appropriate weight to the opinion of the treating provider without providing a proper analysis of the medical evidence; (2) substantial evidence demonstrates that Plaintiff's severe impairments meet one of the listed impairments pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 1; and (3) new and material evidence warrants a remand. (R. 15).

## II. Evidence

### A. Relevant Medical Evidence[2]

#### 1. Treatment Records

Plaintiff was incarcerated for twenty-four (24) years and was released just days before the alleged onset date—July 1, 2016. (Tr. 227). During his incarceration, Plaintiff was diagnosed with schizophrenia, paranoid type and personality disorder by the resident psychiatrist. (Tr. 1357). Plaintiff remained symptomatic until May of 2011, when his medications were changed, and he demonstrated significant improvement by December of 2011. (Tr. 1358-1359).

---

[1] According to Plaintiff's brief, a subsequent application for SSI was approved, and Plaintiff was found to be disabled as of September 2019. (R. 15, PageID# 2053).

[2] The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised. Thus, it is focused on the treatment notes of treating psychiatrist Megan Testa, M.D. Further, because Plaintiff has not challenged the ALJ's credibility determination or the VE's testimony, the court foregoes any recitation of the hearing evidence.

After his release, on June 28, 2016, Plaintiff was referred for treatment by the Adult Parole Authority (APA). (Tr. 1662). On mental status examination, Plaintiff reported being in a "pretty good" mood, was cooperative, had clear speech, no delusions/hallucinations, no homicidal/suicidal ideation, concrete thought process, flat affect, and fair insight/judgment. (Tr. 1667-1668).

On August 26, 2016, Plaintiff saw psychiatrist Megan Testa, M.D. (Tr. 1731). On mental status examination, Plaintiff was well-groomed, was oriented x 4, had normal attention/concentration, an alert and cooperative appearance/behavior, no perceptual disturbance, fluent speech, intact long and short-term memory, stable affect appropriate to mood, a euthymic mood, and good insight and judgment. (Tr. 1728-1730). Dr. Testa's impression was that P laintiff's schizophrenia was stable and his medications were continued. (Tr. 1731).

On September 22, 2016, Dr. Testa's findings on mental status examination remained unchanged. (Tr. 1779-1781). She again continued Plaintiff's medications unchanged and noted his schizophrenia was stable. (Tr. 1781).

On October 20, 2016, Dr. Testa's findings on mental status examination again remained unchanged. (Tr. 1784-1786). She again continued Plaintiff's medications unchanged and noted his schizophrenia was stable. (Tr. 1761).

On November 16, 2016, Dr. Testa's findings on mental status examination again remained unchanged. (Tr. 1788-1791). She again continued Plaintiff's medications unchanged and noted his schizophrenia was stable. (Tr. 1791).

On December 11, 2016, Plaintiff saw Dr. Testa, and mental status examination was unremarkable. (Tr. 1793-1796). Dr. Testa's diagnoses were schizophrenia (stable), on parole (going very well), and medical issues (stable). (Tr. 1796). His medications were continued

3

unchanged. *Id*. A subsequent examinations by Dr. Testa in January of 2017 was similarly unremarkable. (Tr. 1798-1801)

On February 9, 2017, Plaintiff was again seen by Dr. Testa. (Tr. 1804-1808). On mental status examination, Plaintiff was well-groomed, was oriented x 4, had normal attention/concentration, alert and cooperative appearance/behavior, no perceptual disturbance, fluent speech, intact long and short-term memory, stable affect appropriate to mood, a euthymic mood, and fair insight and judgment. (Tr. 1804-1806). He had suspicious thought content. (Tr. 1806). Dr. Testa's impression was that Plaintiff's schizophrenia was stable overall, but Plaintiff was very suspicious and not amendable to reality testing. (Tr. 1807). His medications were continued unchanged. (Tr. 1807).

On July 27, 2017, Plaintiff met with Community Psychiatric Supports and Treatment (CPST), specifically intern Tiffany Todd, stating that he was preparing for the GED, struggling with simple problems, felt confident with math, and reported needing to focus on punctuation. (Tr. 1818-1819).

On August 3, 2017, on mental status examination, Dr. Testa observed that Plaintiff's attention/concentration were impaired, his insight was fair, his judgment was good, and his thought content was suspicious. (Tr. 1900). Plaintiff refused to sit in a chair due to his belief that he had been rectally poisoned. (Tr. 1898).

On August 17, 2017, Plaintiff reported to Ms. Todd of CPST that he was still struggling with punctuation and word math problems, indicating he would take the GED again on the 28th. (Tr. 1822-1823). Plaintiff refused to sign his treatment plan for the second time "based on a reported 'bad experience.'" (Tr. 1824).

On August 31, 2017, Dr. Testa's mental status examination indicated Plaintiff's

4

attention/concentration were normal,[3] he had auditory hallucinations, his insight and judgment were good, and his thought content was suspicious. (Tr. 1904-1908). Plaintiff "maintain[ed] [the] belief that we poisoned him w/ a chair here leading to rectal pain." (Tr. 1904). Dr. Testa diagnosed schizophrenia with no change, indicating Plaintiff remained suspicious. Dr. Testa's plan was to continue Plaintiff's medications, noting that Plaintiff declined adjustment at that time believing he was doing well. (Tr. 1908). She was monitoring Plaintiff's paranoia. *Id*.

On September 29, 2017, Plaintiff reported to Dr. Testa that he was doing fine. (Tr. 1910). Dr. Testa had learned that Plaintiff had made complaints with the ADAMHS Board, which she believed could indicate worsening paranoia. *Id*. He continued to believe he had been rectally poisoned at the doctor's office. *Id*. He reported hearing low volume voices infrequently, but with no commands. *Id*. On mental status examination, Plaintiff had auditory hallucinations, alert and mute appearance and behavior, his insight and judgment were fair, and his thought content was suspicious.[4] (Tr. 1911-1912). She diagnosed schizophrenia with no change, indicating Plaintiff remained suspicious. Dr. Testa's plan was to continue Plaintiff's medications, noting that Plaintiff continued to decline adjustment. (Tr. 1914). She was monitoring Plaintiff's paranoia. *Id*.

On November 4, 2017, Plaintiff reported that the voices he hears are "real low and I haven't been as paranoid lately." (Tr. 1916). Plaintiff stated his concentration was fair. *Id*. He continued to refuse to sit down. *Id*. On mental status examination, Plaintiff's affect was stable and appropriate to mood, his insight and judgment were fair, he had auditory hallucinations, and his

---

[3] Dr. Testa's same treatment note, however, stated that Plaintiff reported his concentration was marginal due to intermittent auditory hallucinations, that Plaintiff had to leave crowds due to the same, and that auditory hallucinations disrupted his GED classes. (Tr. 1904).

[4] There was no indication whether Plaintiff's attention/concentration was normal or impaired. (Tr. 1911).

5

thought content was suspicious. (Tr. 1917-1918). Dr. Testa diagnosed schizophrenia with no change, indicating Plaintiff remained suspicious and had declined medication adjustment. (Tr. 1920).

On December 8, 2017, Plaintiff was seen by Dr. Testa and refused to sit in the waiting room or exam room, fearing he might be poisoned through his pants as he believed that had happened previously. (Tr. 1922-1926). He reported good concentration. (Tr. 1922). Plaintiff continued to have suspicious thoughts, but no hallucinations and his mental examinations was otherwise normal, including normal attention/concentration. (Tr. 1923-1925).

On January 11, 2018, Dr. Testa's treatment notes indicate that Plaintiff "said that he feels well. He hears light voices, no commands, copes by reading the Bible. He denies [visual hallucinations]. He stated that his thinking has been organized, concentration has been good… He denied paranoia, did not make any suspicious statements but did not sit" in the office. (Tr. 1928). Dr. Testa's mental status examination indicated that Plaintiff's attention/concentration was impaired, that he had auditory hallucinations, and that Plaintiff's thought content was appropriate to circumstances. (Tr. 1928-1930).

On March 8, 2018, Plaintiff saw Dr. Testa, and refused to sign the treatment plan. (Tr. 1941). Dr. Testa wanted to increase Plaintiff's medication due to Plaintiff's increased auditory hallucinations. *Id*. Dr. Testa diagnosed schizophrenia with "voices worsening ongoing paranoia." *Id*. Dr. Testa observed that when she last saw Plaintiff, he expressed a belief that "CPST was 'backdating' his treatment plan and not writing down his concerns." (Tr. 1939).

On April 5, 2018, Plaintiff reported increased auditory hallucinations and residual paranoia. (Tr. 1943-1948). He still believed he was poisoned, and believed staff was backdating his chart. *Id*. On mental status examination, Dr. Testa noted Plaintiff had normal attention/concentration,

6

auditory hallucinations, he would not sit down in the agency, he had fair insight and judgment, and suspicious thought content. (Tr. 1944-1945). Dr. Testa diagnosed schizophrenia "relatively stable w/ residual paranoia and [auditory hallucinations]." (Tr. 1948). Plaintiff again refused to sign the treatment, and Dr. Testa noted Plaintiff had continued the medical management treatment plan from January of 2018 with no improvement. *Id*.

On April 26, 2018, nurse Lacy Scot noted that Plaintiff indicated he was feeling "superb." (Tr. 1960-1961). She noted Plaintiff had auditory hallucinations, a full affect, cooperative behavior, logical thought process, and she estimated Plaintiff had average intelligence. *Id*.

On May 17, 2018, Plaintiff saw Dr. Testa, and reported that his medications were helping, that he continued to hear voices most days but they were tolerable. (Tr. 1963). Except for the hallucinations, Dr. Testa's mental status examination of Plaintiff was largely unremarkable, including thought content appropriate to the circumstances. (Tr. 1964-1965). Dr. Testa noted Plaintiff had continued, with no improvement, the medical management treatment plan from April 26, 2018. *Id*.

**2. Medical Opinions Concerning Plaintiff's Functional Limitations**

On November 30, 2016, State Agency psychological consultant Tonnie Hoyle, Psy. D., reviewed Plaintiff's medical records and completed a mental RFC assessment. (Tr. 141-143). She listed Plaintiff's symptoms as "[u]nderstanding and memory limitations," "[s]ustained concentration and persistence limitations," "[s]ocial interaction limitations," and "[a]bility to adapt limitations." (Tr. 140). Dr. Hoyle opined that Plaintiff was moderately limited in his ability to understand and remember detailed instructions, explaining that Plaintiff's "[i]mpairments related to schizophrenia limit his ability to follow complex and detailed instructions, but would be able to complete familiar tasks with simple, multistep instructions." (Tr. 141). In the domain

7

of sustained concentration and persistence, Dr. Hoyle indicated Plaintiff was moderately limited in his ability to carry out detailed instructions, to maintain attention and concentration for extended periods, and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id*. Dr. Hoyle explained that Plaintiff "would be able to perform familiar tasks independent of others in a setting without expectation for sustained rapid pace, high productivity, or strict time constraints." (Tr. 142). In the area of social interaction, Dr. Hoyle opined Plaintiff was moderately limited in his ability to interact appropriately with the general public and to accept instructions and respond appropriately to criticism from supervisors. *Id*. Dr. Hoyle explained that Plaintiff could "interact with others on a brief, intermittent, superficial basis without expectations to engage in collaborative tasks or frequent contact with the public." *Id*. Finally, in the domain of adaptation, Dr. Hoyle opined that Plaintiff was moderately limited in his ability to respond appropriately to changes in the work setting and to set realistic goals or make plans independently of others. (Tr. 142). Dr. Hoyle explained that Plaintiff could "perform familiar tasks that can be completed independent of others in a low stress stable setting with clear and predictable expectations. Changes in routine should be infrequent and implemented with advanced notice." *Id*.

On February 22, 2017, State Agency psychological consultant Paul Tangeman, Ph.D., reviewed Plaintiff's medical records and completed a mental RFC assessment. (Tr. 151-154). Dr. Tangeman's opinions echoed those of Dr. Hoyle. *Id*.

On August 24, 2017, Dr. Testa completed a medical source statement form regarding Plaintiff's mental capacity. (Tr. 1949-1950). Dr. Testa checked boxes indicating that Plaintiff had marked impairment in his ability to sequence multi-step activities and use reason and

judgment to make work related decisions. (Tr. 1949). In the domain of interacting with others Dr. Testa indicated Plaintiff had marked impairment in his ability to cooperate with others, ask for help when needed, handle conflicts with others, understand and respond to social cues, and to keep social interactions free of excessive irritability, sensitivity, argumentativeness or suspiciousness. *Id*. She further indicated Plaintiff was extremely limited in his ability to respond to requests, suggestions, criticism, correction and challenges. *Id*. In the domain of concentration, persistence and pace, Plaintiff was markedly limited in his ability to ignore or avoid distractions while working and in his ability to work with others without interrupting or distracting them. (Tr. 1950). In the domain of adaptation, Plaintiff was markedly limited in his ability to adapt to changes, manage his psychologically based symptoms, and to set realistic goals. *Id*. Dr. Testa explained that Plaintiff's treatment for schizophrenia was "resistant with severe paranoia that impairs his perception of reality & ability to work [with] others." *Id*. She further noted that Plaintiff's residual hallucinations "impair concentration, persistence & pace." *Id*. Finally, Dr. Testa noted that Plaintiff was on medications and that further improvement was unlikely. *Id*.

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage

9

process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent him from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent him from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since July 1, 2016, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairment: paranoid schizophrenia (20 C.F.R. § 416.920(C)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR

    416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is able to complete familiar tasks with simple multistep instructions. The claimant is able to perform familiar tasks independent of others in a setting without expectations for sustained rapid pace, high productivity or strict time constraints. The claimant can interact with others on a brief, intermittent superficial basis without expectations to engage in collaborative tasks or frequent contact with the public. The claimant can perform familiar tasks that can be completed independent of others in a stable setting with clear and predictable expectations. Changes in routine should be infrequent and implemented with advanced notice.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on October 20, 1971 and was 44 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 C.F.R. 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since July 1, 2016, the date the application was filed (20 CFR 416.920(g)).

(Tr. 18-24).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v.*

*Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B. Plaintiff's Assignments of Error**

Plaintiff's first assignment of error asserts the ALJ erred, under the treating source rule, by failing to provide good reasons for rejecting the opinion of his treating psychiatrist—Dr. Testa. (R. 15, PageID# 2042-2048). The Commissioner does not challenge Plaintiff's assertion that Dr. Testa was a treating psychiatrist. (R. 18), and the ALJ's decision expressly refers to her as a treating psychiatrist. (Tr. 20). Nevertheless, the Commissioner contends that "[t]he inconsistency between Dr. Testa's treatment notes and her extreme opinions was a good reason for the ALJ to discount her opinion." (R. 18, PageID# 2842, citing *Oglesby v. Colvin*, 2014 WL 1156239, at *10 (N.D. Ohio Mar. 21, 2014) (ALJ properly discounted treating source's opinion that was inconsistent with the provider's own treatment notes)).

12

"Provided that they are based on sufficient medical data, 'the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). In other words, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (*quoting* 20 C.F.R. § 404.1527(d)(2)). If an ALJ does not give a treating source's opinion controlling weight, then the ALJ must give "good reasons" for doing so that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See Wilson*, 378 F.3d at 544 (*quoting* Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5). The "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is "in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that [her] physician has deemed [her] disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson*, 378 F.3d at 544 (*quoting Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).

It is well-established that administrative law judges may not make medical judgments. *See Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.") (*quoting Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir.

13

1990)). Although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009). "An example of a good reason is that the treating physician's opinion is 'unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence.'" *Conner v. Comm'r of Soc. Sec.*, 658 Fed. App'x 248, 253-254 (6th Cir. 2016) (*citing Morr v. Comm'r of Soc. Sec.*, 616 Fed. App'x 210, 211 (6th Cir. 2015)); *see also Keeler v. Comm'r of Soc. Sec.*, 511 Fed. App'x 472, 473 (6th Cir. 2013) (holding that an ALJ properly discounted the subjective evidence contained in a treating physician's opinion because it too heavily relied on the patient's complaints).

Because it is not in dispute that Dr. Testa professionally treated Plaintiff in her capacity as a psychiatrist, the ALJ was obligated to provide good reasons for rejecting the limitations she assessed in the August 24, 2017 medical source statement as contained in Exhibit 7F. The decision addressed this opinion from Dr. Testa as follows:

> In contrast, I give little weight to the opinions of Dr. Testa, as expressed at Exhibit 7F. In that exhibit, she opined that the claimant has marked limitations in many mental health domains. These opinions are not entitled to controlling weight. They are inconsistent with the claimant's own treatment notes.
>
> The claimant has auditory hallucinations. However, the claimant describes them as infrequent and as tolerable. They do not command him to do any harm. He reported that he can ignore the voices (Ex. 6F page 129).
>
> Dr. Testa, herself, described the claimant's schizophrenia as "relatively stable" (Ex. 8F page 16). He has not required a psychiatric hospitalization. He lives in a group home, attends the Magnolia Clubhouse, he shops, he reads, and he tends his own hygiene. Further, he has an average intelligence, and he is calm, cooperative, and logical (Ex. 8F page 10).

(Tr. 22).

The ALJ's statement that the Dr. Testa's opinion was "inconsistent" with her treatment notes is a conclusion rather than explanation and, without more, does not constitute a good reason for rejecting her opinion. The decision, however, observes that Plaintiff's own statements, referenced within the treatment notes, reflect that Plaintiff's auditory hallucinations are infrequent, do not command him to do harm, and that Plaintiff is able to ignore the voices he hears. First, some treatment notes contradict the ALJ's assertion that Plaintiff hearing voices was infrequent, as Plaintiff reportedly heard voices most days. (*See, e.g.*, Tr. 1963). In addition, Dr. Testa's explanation in the medical source statement asserted that Plaintiff's residual hallucinations impacted Plaintiff's concentration, persistence, and pace. (Tr. 1950). Nevertheless, the bulk of Dr. Testa's treatment notes, cited above, indicate that Plaintiff had normal attention/concentration. This readily apparent inconsistency provides good reason for the ALJ to discount the marked limitations contained in Dr. Testa's medical source statement—*to the extent those limitations stemmed from this inconsistency*.

Dr. Testa, however, assessed twelve areas of marked limitations and only two of the assessed areas were in the domain of concentration, persistence and/or pace. (Tr. 1949-1950). In addition, Dr. Testa's medical source statement explained that Plaintiff's treatment for schizophrenia was "resistant with severe paranoia that impairs his perception of reality & ability to work [with] others." (Tr. 1950). Eight of the twelve areas of marked limitations were assessed in the domains of interacting with others and adaptation/managing oneself. (Tr. 1949-1950). The ALJ's observation—that Dr. Testa herself has described Plaintiff as "relatively stable"—is, on its own, an insufficient reason to reject the assessed limitations. Courts have observed that the fact that a social security claimant has been described as "stable" is of "rather limited utility in the disability context." *Kiefer v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 1976, 2014 WL 66717

15

at * 5 (N.D. Ohio Jan. 8, 2014) (White, M.J.); *see also Davisson v. Astrue*, 2011 U.S. Dist. LEXIS 64263, 2011 WL 2461883 at * 10 (N.D. Ohio June 17, 2011) ("A person can have a condition that is both 'stable' and disabling at the same time.") (citations omitted); *Hicks v. Comm'r of Social Sec.*, 2009 U.S. Dist. LEXIS 89481, 2009 WL 3127183 at * 3 (S.D. Ohio Sept. 28, 2009) ("Stable" is a medical term that simply means a condition is neither better nor worse); *Lechner v. Barnhart*, 321 F.Supp.2d 1015, 1030 (E.D. Wisc. 2004) ("One can be stable and yet disabled.").

In other words, use of the term "stable" in the disability context does not describe the severity of an impairment. *See Lingenfelter v. Comm'r of Soc. Sec.*, 2013 U.S. Dist. LEXIS 138438, 2013 WL 5428731 at * 10, at note 7 (N.D. Ohio Sept. 26, 2013) (White, M.J.). According to *Dorland's Illustrated Medical Dictionary*, 30th ed., 2003, "stable" simply means "not moving, fixed, firm; resistance to change." Herein, the fact that Plaintiff was mostly "stable" indicates that his symptoms had neither improved nor worsened. Dr. Testa's medical source statement itself states that Plaintiff was on medications and that "further improvement [was] unlikely." (Tr. 1950). Further, despite the characterization of Plaintiff's schizophrenia as stable, Dr. Testa indicated that Plaintiff's paranoia and suspicious thinking could be worsening. (Tr. 1905-1908, 1910, 1941). As such, in this context, treatment notes indicating Plaintiff was "stable" do not constitute good reasons for rejecting Dr. Testa's opinion.

The ALJ, however, further rejected Dr. Testa's opinion because Plaintiff "has not required a psychiatric hospitalization[, h]e lives in a group home, attends the Magnolia Clubhouse, he shops, he reads, and he tends his own hygiene." (Tr. 22). The ALJ also cited nurse Scot's notes indicating that Plaintiff had average intelligence, and was calm, cooperative, and logical during an examination on April 26, 2018. (Tr. 22, citing Exh. 8F, Tr. 1960-1961). The decision,

nonetheless, does not explain how these observations undermine the reliability of Dr. Testa's opinions. The medical source statement indicated that Plaintiff had marked impairment in his ability to cooperate with others, ask for help when needed, handle conflicts with others, understand and respond to social cues, and to keep social interactions free of excessive irritability, sensitivity, argumentativeness or suspiciousness. (Tr. 1949). Implicit in the ALJ's reasoning is the unsubstantiated assumption that someone as mentally limited as described by Dr. Testa would: (1) require psychiatric hospitalization; (2) would be incapable of engaging in the aforementioned activities; and (3) could not be calm, cooperative, or logical during an examination or possess average intelligence.

An ALJ, however, is not a medical expert and cannot formulate such medical opinions. Here, the ALJ's determination—that Plaintiff's lack of psychiatric hospitalization, activities, and/or mental status examination findings are inherently incompatible with the limitations assessed by Dr. Testa, the treating psychiatrist—is tantamount to a medical judgment. In other words, the ALJ provided no foundation for concluding that an individual capable of performing the above activities or who would yield mental status examinations as indicated could not also possess the marked limitations identified in the medical source statement. The case law is well-established that an ALJ may not substitute his or her personal interpretation of the evidence for those of trained medical professionals. *See, e.g., Meece v. Barnhart*, 192 Fed. App'x. 456, 465 (6th Cir. 2006) ("[T]he ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence.") (*citing McCain v. Dir., Office of Workers' Comp. Programs*, 58 Fed. App'x 184, 193 (6th Cir. 2003) (citation omitted); *Pietrunti v. Director, Office of Workers' Comp. Programs, United States DOL*, 119 F.3d 1035, 1044 (2d Cir. 1997); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir.

17

1990) ("But judges, including [ALJs] of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.")); *accord Winning v. Comm'r of Soc. Sec.*, 661 F. Supp.2d 807, 823-24 (N.D. Ohio 2009) ("Although the ALJ is charged with making credibility determinations, an ALJ 'does not have the expertise to make medical judgments.'") (O'Malley, J.); *Stallworth v. Astrue*, 2009 WL 335317 at *9 (S.D. Ohio, Feb. 10, 2009) ("[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other evidence or authority in the record.") (*quoting Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000)). Moreover, the ALJ's discussion of Dr. Testa's opinion is bereft of any discussion concerning Plaintiff's paranoia, and whether Dr. Testa's treatment notes support the paranoia-based limitations.

The court recommends finding that the ALJ erred by not providing good reasons for rejecting the limitations assessed by Plaintiff's treating psychiatrist, Dr. Testa. On remand, the ALJ should issue a new decision that fully explains the weight given to the treating source. Plaintiff's remaining arguments challenging whether he met a listing or whether new, material evidence requires a remand are rendered moot, and will not be addressed in the interests of judicial economy.

## VI. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be REVERSED and REMANDED for proceedings consistent with this opinion.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: August 13, 2020

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).